UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-22426-BLOOM/Elfenbein

EMERGENCY RECOVERY INC.,

    Plaintiff,

v.

CONIFER REVENUE CYCLE
SOLUTIONS, LLC AND
TENET HEALTHCARE CORP.,

    Defendants.
_____/

## ORDER ON MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS PLAINTIFF'S COMPLAINT

**THIS CAUSE** is before the Court upon Defendants Conifer Revenue Cycle Solutions, LLC's ("Conifer") and Tenet Healthcare Corporation's ("Tenet") (collectively "Defendants") Motion to Compel Arbitration or, In the Alternative, Dismiss Plaintiff's Complaint ("Motion"), ECF No. [28], to which Plaintiff Emergency Recovery Inc. ("ERI") filed a Response in Opposition, ECF No. [45], and Defendants filed a Reply, ECF No. [48]. The Court has reviewed the Motion, the supporting and opposing submissions, the record in the case, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**I. BACKGROUND**

This matter arises out of two distinct but related disputes. ERI is an entity that represents hospitals and assists providers in recovering amounts owed pursuant to § 627.736, Florida Statutes, commonly known as the "PIP law," for services rendered in treating auto accident victims. ECF No. [1] ¶ 9. For the past several years, ERI's principal client was Conifer, which is a subsidiary of Tenet. *Id*. at ¶ 19 The contractual dispute arises from an agreement between ERI and Conifer

wherein ERI was to provide collection services in exchange for contingency fees based on amounts ERI was able to recover from third-party liability accounts. ECF No. [45] at 2. In May 2024, ERI terminated its contractual relationship with Conifer after Conifer failed to pay invoices and did not provide access to the payment system necessary for ERI to audit and invoice its services. ECF No. [1] at ¶¶ 42-45.

A dispute also arose between ERI, Conifer, and Tenet in the wake of a lawsuit GEICO brought against ERI and Tenet, which alleged "that ERI had engaged in fraudulent practices related to its recovery services." *Id.* Although GEICO's lawsuit against ERI and Tenet was ultimately dismissed, while the lawsuit was still active, Conifer and Tenet (Conifer's affiliate) purportedly "collaborated with GEICO to reduce or cease using ERI's services as part of a settlement agreement between GEICO and Tenet." *Id.* at 2 (citing ECF No. [1] at ¶ 40).

As a result of Conifer and Tenet's alleged conduct, ERI filed the Complaint in this case asserting a claim for breach of contract against Conifer and claims for civil conspiracy and tortious interference with a business relationship against both Conifer and Tenet. ECF No. [1].

On September 6, 2024, Defendants filed the instant Motion contending that this action may not proceed before this Court because the ERI-Conifer contract ("Contract") expressly forecloses such a proceeding. First, Defendants assert that the Contract contains an arbitration clause that requires ERI to arbitrate any dispute related to the contract between Conifer and ERI, including disputes involving any affiliate of Conifer, such as Tenet. *See id.* at 1. Moreover, not only must any dispute involving the Contract proceed to arbitration, but the Contract provides that the arbitrator decides whether an issue is arbitrable, not the Court. *Id.* at 2. Therefore, Defendants contend that ERI's claims must proceed before an arbitrator.

2

Alternatively, even if this Court were the correct venue, Defendants maintain that ERI has failed to state a claim upon which relief may be granted. *Id. at* 11. Specifically, Defendants argue ERI's breach of contract claim fails because the consequential damages of "lost profits" and "damage to reputation" sought are not available under the Contract. *Id.* at 14. As for the civil conspiracy and tortious interference claims, Defendants maintain that a contracting party is not liable for interfering with its own contract, and therefore, Conifer and Tenet are not subject to liability for any alleged interference with the ERI-Conifer contract. *Id. at* 11. Defendants contend that their conduct is privileged because there is nothing improper about terminating a relationship with a party to avoid a lawsuit by a third party. *Id*. at 13. Furthermore, Defendants argue ERI's civil conspiracy claim must fail because ERI has failed to establish tortious interference, and there is no other tort alleged that would form the basis for the conspiracy. *Id.* at 14.

ERI maintains that whether its claims are arbitrable must be decided by this Court because the parties failed to clearly and unmistakably delegate the authority to decide arbitrability to the arbitrator. *See* ECF No. [45] at 4. And because the Court has the authority to decide the issue, it should find that none of ERI's claims are subject to arbitration because there was no meeting of the minds between the parties given the conflict between the Contract's forum selection clause and its arbitration clause. *Id.* at 5.

Alternatively, if the Court finds the breach of contract claim is subject to arbitration, ERI maintains that its remaining tort claims do not arise from or relate to the Contract, and therefore, are not within the scope of the Contract's arbitration clause. *See id.* at 7. Should the Court ultimately find that all the claims are subject to arbitration, ERI requests that the case be stayed rather than dismissed. *See id.* at 8.

## II. LEGAL STANDARD

The presence of a valid arbitration provision raises a strong presumption of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any [ ] business transaction"); *VVG Real Estate Investments v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1203 (S.D. Fla. 2018) ("The FAA 'places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—"a national policy"—in favor of arbitration.'") (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (internal level of citations omitted)). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) abrogated on other grounds by *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 571 U.S. 177 (2014) (quoting *Mitsubishi Motors*, 473 U.S. at 625-26); *Hemispherx*, 553 F.3d at 1366 ("The role of the courts is to rigorously enforce agreements to arbitrate.") (internal citation and quotation omitted). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues

as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 213. Therefore, so long as (1) a valid agreement to arbitrate exists; (2) arbitrable issue exists; and (3) the right to arbitrate has not been waived, a court is required to issue an order compelling arbitration. *See Gomez v. Allied Professionals Insurance Company*, 457 F. Supp. 3d 1351, 1357 (S.D. Fla. 2020) (collecting cases); *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

However, despite the courts' proclivity for enforcement, a party will not be required to arbitrate where the party has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). However, the parties may delegate the Court's authority to determine whether parties must submit an issue to arbitration to an arbitrator. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). The Court must recognize such a delegation so long as the parties have clearly and unmistakably assented to such delegation. *See Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is

5

clear and unmistakable evidence that they did so.") (internal quotations and citations omitted); *see also Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284, 1303 (11th Cir. 2022).

When reviewing a motion to compel arbitration, the Court of Appeals for the Eleventh Circuit has explained that courts should consider such a motion "similarly to motions for summary judgment." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (concluding "that a summary judgment-like standard is appropriate and hold[ing] that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement")). Once the movant satisfies its initial burden of showing there is no genuine issue of material fact, then "the burden shifts to the nonmovant to show evidence raising a genuine issue of material fact." *Deal v. Tugalo Gas Co., Inc.*, 991 F.3d 1313, 1325 (11th Cir. 2021). "A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) (citing *Bess v. Check Express*, 294 F.3d 1298, 1306-07 (11th Cir. 2002)).

### III. DISCUSSION

#### A. Arbitration and Arbitrability Clauses within the Parties' Contract

The ERI-Conifer contract ("Contract") contains an arbitration clause which states:

> 28.1 In the event of a claim, controversy or dispute arising out of or related to this Amended and Restated Agreement, each party agrees to give the other written notice of such, and both agree to meet and confer within thirty (30) days of the receipt of the notice of such claim, controversy, or dispute to try to resolve the matter. If such meeting or meetings fails to resolve the matter to the satisfaction of the party raising the issue then the parties will participate in mediation in an effort to resolve the matter. The parties agree that such mediation shall occur within thirty (30) days of a request for mediation, or as otherwise agreed to between the parties.

> The mediator, scope and process of such mediation will be agreed between the parties.
>
> 28.2 Any controversy, claim or dispute which is not resolved through mediation will be settled by binding arbitration before a single arbitrator, who is an attorney with experience in the outsourcing and the health care industry. The arbitration will be conducted under the then-current Commercial Arbitration Rules of the American Arbitration Association. The duty and right to arbitrate will extend to any employee, officer, director, shareholder, subcontractor, or affiliate of the parties to the extent such right or duty arises through a party or is related to this Amended and Restated Agreement. The decision and award of the arbitrator will be final and binding, and the award rendered may be entered in any court having jurisdiction thereof. The arbitrator is directed to hear and decide dispositive motions in advance of the hearing-on-the-merits by applying the law of the State of Texas. The arbitration will be held in Dallas, Texas, or such other site as the parties may mutually agree. Notwithstanding the obligation to arbitrate as herein set forth, either party may seek an injunction in court to prevent ongoing breach of the confidentiality provisions or misuse or infringement of its intellectual property rights pending the appointment of and action on the breach of confidentiality, misuse, or infringement of intellectual property rights, by the arbitrator The arbitrator will enforce the terms of the Amended and Restated Agreement and will have no authority to award punitive damages, non-compensatory damages or any damages other than direct damages, or to award direct damages in excess of the limitations and exclusions set forth in this Amended and Restated Agreement. The existence of the arbitration, the arbitration proceedings and the outcome of such arbitration will be treated as Confidential Information under this Amended and Restated Agreement and will not be disclosed by either party. Neither party may bring a claim more than one (1) year after the party knows or should have known the facts giving rise to the claim
>
> 28.3 The arbitrator shall award costs associated with the arbitration to the prevailing party, but each party shall bear the expense of its own attorneys' fees.

ECF No. [37-3] at § 28.[1]

Given the language in § 28 of the Contract, Defendants contends that ERI's claims are all subject to arbitration because each claim, including the tort claims against Tenet, is related to the Contract. ECF No. [28] at 6. Moreover, Defendants argue that whether ERI's claims are subject to

---

[1] Although the Contract containing the arbitration clause was filed under seal, *see* ECF No. [37-3], the provisions the Court references throughout this Order do not contain confidential information and must be examined in order to resolve the instant motion.

the arbitration clause is not for the Court to decide because the parties have specifically agreed to delegate any questions of arbitrability to the arbitrator. *Id.* Defendants point out that the Contract's "arbitration clause provides that 'the arbitration will be conducted under the then-current Commercial Arbitration Rules of the American Arbitration Association'" *Id.* (quoting ECF No. [37-3] § 28.2). Since the current AAA rules provide "that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim*, without any need to refer such matters first to a court,'" there is no dispute that all the claims Defendants contend are arbitrable must first proceed before an arbitrator before any review by a court is available. *Id.* (quoting Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association, effective September 1, 2022, Rule R-7(a) (emphasis added by Defendants).

Nevertheless, even if no delegation provision existed, Defendants assert that ERI's claims would still be subject to arbitration as there is a (1) valid arbitration agreement; (2) the claims are arbitrable as they all arise out of or are related to the Contract; and (3) the right to arbitrate has not been waived. ECF No. [28] at 7.

Defendants maintain that the validity of the Contract containing the arbitration clause cannot be seriously disputed as it is the same contract "at the heart of ERI's [breach of contract] allegations." *Id.* at 7. Defendants further argue the requirement that the claims be arbitrable "is also easily met" as the parties "broadly agreed that '[a]ny controversy, claim or dispute [arising out of or related to this Amended and Restated Agreement] will be settled by binding arbitration . . . .'" *Id.* at 8 (quoting ECF [37-3] § 28) (emphasis removed). And because Defendants "informed ERI from the outset of the lawsuit that they intended to arbitrate this dispute," and have maintained

8

that position throughout these proceedings, "ERI cannot credibly contend that there has been [a] waiver." *See* ECF No. [28] at 9 n.5.[2]

ERI responds that neither its claims against Conifer nor Tenet should be subject to arbitration. *See* ECF No. [45]. ERI first turns to the arbitrability delegation provision in § 28.2 which states:

> The arbitration will be conducted under the then-current Commercial Arbitration Rules of the American Arbitration Association. The duty and right to arbitrate will extend to any employee, officer, director, shareholder, subcontractor, or affiliate of the parties to the extent such right or duty arises through a party or is related to this Amended and Restated Agreement.

ECF No. [37-3] at § 28.2.

ERI argues that this provision of the Contract is not an effective delegation of the authority to decide questions of arbitrability. *See* ECF No. [45] at 4. ERI contends that by simply referencing the AAA's Commercial Rules, without mention of the particular provision of the rules providing that questions of arbitrability will be decided by an arbitrator, the Contract does not "clearly and unmistakably delegate the issue of arbitrability to the arbitrator." *Id.*

While ERI acknowledges "the Eleventh Circuit has stated that '[u]nder controlling Circuit precedent, [reference to AAA rules] alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator,'"[3] ERI contends that case law does not dictate the

---

[2] To the extent ERI asserts that the claims against non-signatory Tenet are beyond the scope of the Contracts' arbitration clause, Defendants argue that Tenet is a third-party beneficiary because the Contract provides that "the duty and right [to] arbitrate will extend to any . . . *affiliate* of the parties to the extent such right or duty [to arbitrate] arises through a party or is related to this Amended and Restated Agreement." ECF No. [28] at 9 (quoting ECF No. [37-3] at § 28.2) (emphasis added by Defendants). Therefore, since Tenet is an affiliate of Conifer, and the claims against Tenet relate to the Contract, the claims are accordingly arbitrable. *Id.* at 8-9. Alternatively, Defendants contend that equitable estoppel requires the parties to proceed to arbitration on ERI's claims against Tenet.

[3] ECF No. [45] at 5 (quoting *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018)).

outcome because the parties' purported delegation is contradicted by the Contract's forum selection clause which provides:

> This Amended and Restated Agreement shall be governed by and construed in all respects in accordance with the substantive laws of the State of Texas, without reference to its conflict of law principles. Any dispute hereunder shall be resolved exclusively in the state or federal courts, as appropriate, located in Dallas County, Texas.

ECF No. [37-3] at § 14.

According to ERI, the language of § 14 suggests that no dispute related to the Contract is subject to arbitration, and all issues must be resolved in court in Dallas County, Texas. ECF No. [45] at 4. Therefore, reference to the AAA Commercial Rules in § 28.2 is not a clear and unmistakable delegation of authority under the circumstances. *Id.* at 4-5. Given the purported conflict between the delegation provision in § 28.2 and the forum selection clause in § 14, ERI maintains there was not a proper delegation of questions of arbitrability to the arbitrator, and as such, the Court must decide whether ERI's claims are within the scope of the Contract's arbitration clause. *See id.*

ERI emphasizes that not only was the issue of arbitrability not delegated to the arbitrator, no issue arising from or related to the Contract are subject to arbitration as there was no meeting of the minds between Conifer and ERI on the issue of arbitration more generally. According to ERI, the Contract "contains conflicting provisions that undermine any apparent intent to arbitrate disputes" because § 28.2 mandates arbitration for "[a]ny controversy, claim, or dispute which is not resolved through mediation" while § 14 contains a forum selection clause, which states that "[a]ny dispute hereunder shall be resolved exclusively in the state or federal courts, as appropriate, located in Dallas County, Texas.'" ECF No. [45] at 5; ECF No. [37-3] at §§ 14 and 28.2. Consequently, these two provisions "create an irreconcilable ambiguity regarding whether the parties intended to arbitrate or litigate disputes." ECF No. [45] at 5.

However, should the Court find that the breach of contract claim is subject to arbitration, ERI argues that "the tortious interference and conspiracy claims do not arise out of or relate to the [Contract]," and therefore, should not be subject to arbitration. *See id.* at 7.

As noted earlier, "[w]hen presented with a motion to compel arbitration, a district court will consider three factors: (1) whether a valid agreement to arbitrate exists[;] (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Gomez*, 457 F. Supp. 3d 1351, 1357 (S.D. Fla. 2020).

As to the first factor, the Court finds that the arbitration clause of the Contract is valid. While ERI attempts to argue that the arbitration clause is unenforceable because it conflicts with the Contract's forum selection clause, courts in this circuit have repeatedly rejected such arguments. *See D.A.M. Productions, Inc. v. Acosta Resituyo*, Case No. 17-22962-CIV, 2018 WL 11372106, at *6 (S.D. Fla. Feb. 2018) (finding that the contract's forum selection clause and arbitration clause did not cancel each other out simply because the forum selection clause designated the jurisdiction to adjudicate "all matters related to the execution, interpretation, and compliance with this agreement.") (quoting the agreement in that case); *Bush v. Nationwide Mutual Ins. Co.*, Civ. Act. No. 4:20-cv-219, 2021 WL 3711183, at *4 (S.D. Ga. Aug. 20, 2021) (same); *B&Z Auto Enterprises, LLC v. Autotrader.com, Inc.*, Civ. Act. No. 1:16-CV-2313, 2017 WL 7611519, at *8 (N.D. Ga. Mar. 13, 2017) ("The forum selection clause in the [parties'] Agreement can be understood as complementary to the agreement to arbitrate[.]"); *Goff Group, Inc. v. Greenwich Ins. Co.*, 231 F. Supp. 2d 1147, 1152 (M.D. Ala. 2002) ("Goff's reading sets up the two provisions in conflict with one another: one foreclosing arbitration, the other allowing it. 'This interpretation is untenable.'") (internal citations omitted). Indeed, courts routinely recognize that mandatory arbitration clauses and forum selection clauses are not mutually exclusive, but

rather are complementary. *See Graddy v. Carnegie Accadmy, LLC*, Civil Action No. 1:21-cv-00639, 2022 WL 903193, at *4 (N.D. Ga. Mar. 28, 2022) ("Finding that an arbitration provision and a forum selection clause are not mutually exclusive 'is the consensus approach across jurisdictions.'") (quoting *Bush*, 2021 WL 3711183, at *4); *see also Branch v. Mays*, 265 F. Supp. 3d 801, 805 (E.D. Tenn. 2017) ("Indeed, the weight of authority holds just the opposite— mandatory arbitration clauses and forum-selection clauses are not mutually exclusive, but rather are complementary.") (emphasis in the original). To construe the provisions otherwise would run contrary to the federal policy favoring arbitration[4] as well as general principles of contract law.

When interpreting a contract, courts are to avoid reading a particular provision in such as a way as to render another provision void, and instead "must strive to interpret a contract in such a way as to give meaning to all provisions while doing violence to none." *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1254 (S.D. Fla. 2017) (internal quotations and citations omitted); *see also Indemnity Ins. Co. of N. Am. V. W&T Offshore, Inc.*, 756 F.3d 347, 351 (5th Cir. 2014) ("[A] court construing a contract must read that contract in a manner that confers meaning to all of its terms, rendering the contract's terms consistent with one another. [ ] 'In doing so, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'") (quoting *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006)). The Court finds that the Contract's arbitration and forum selection clauses can be read so as not to conflict with each other. For instance, even if all the disputes were subject to arbitration, it would still be appropriate under the Contract for a party

---

[4] *See Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (noting the "federal policy favoring arbitration"); *Klay v. All Defendants*, 389 F.3d 1191, 1201 (11th Cir. 2004) (finding that, given the policy favoring arbitration, "it is the role of courts to 'rigorously enforce agreements to arbitrate.'") (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

to seek injunctive relief or an order vacating or confirming the arbitrator's final award at the conclusion of the arbitration proceedings. *See* ECF No. [37-3] at § 28.2;[5] *see also Hidroelectrica Santa Rita S.A. v. Corpracion AIC, SA*, 119 F.4th 920, 927 (11th Cir. 2024) (noting the federal courts limited authority to review a final arbitration award); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (same). Additionally, the forum selection clause might be controlling if the parties waived their right to arbitration and either explicitly or implicitly consented to allowing the claims to be resolved through legal proceedings. *See Sims Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1319-20 (S.D. Fla. 2004). Since those narrow set of circumstances would allow a party to seek relief in court, it is entirely consistent for the parties to preemptively agree to a judicial forum to litigate those issues while simultaneously requiring that all other issues arising or relating to the Contract proceed to arbitration. Since the arbitration clause and the forum selection clause are capable of being read together harmoniously, the Court finds that the forum selection clause does not make the Contract's arbitration clause so ambiguous as to render the clause invalid.

Since the arbitration clause is valid, and there is no issue as to waiver,[6] all that is left to decide is whether ERI's claims fall within the scope of the arbitration clause. However, the scope

---

[5] § 28 of the Contract provides:

> Notwithstanding the obligation to arbitrate as herein set forth, **either party may seek an injunction in court** to prevent ongoing breach of the confidentiality provisions or misuse or infringement of its intellectual property rights pending the appointment of and action on the breach of confidentiality, misuse, or infringement of intellectual property rights, by the arbitrator.

ECF No. [37-3] at § 28.2. This language explicitly contemplates that certain injunctions would be beyond the scope of the arbitration clause and thus would be subject to the Contract's forum selection clause.

[6] ERI makes no argument that Defendants have waived the arbitration clause of the Contract. *See generally* ECF No. [45]. Therefore, the Court does not find that the arbitration clause has been waived.

of arbitration is not a question for the undersigned to decide because the Court finds the Contract's provision delegating issues of arbitrability to the arbitrator is valid and enforceable.

The Eleventh Circuit has stated that "by incorporating AAA rules into an agreement[,] parties clearly and unmistakably evince an intent to delegate questions of arbitrability." *JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018) (citing *Terminix International Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327 (11th Cir. 2005); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308 (11th Cir. 2014); *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230 (11th Cir. 2018)). ERI cites only one out-of-circuit case that supports a contrary conclusion.[7] *See Taylor v. Samsung Electronics America, Inc.*, 2020 WL 1248655, at *4 (N.D. Ill. Mar. 16, 2020). However, even that court recognized that the "overwhelming majority of courts . . . have concluded that an arbitration agreement's incorporation by reference of [AAA] rule[s] . . . [are] sufficient to delegate to the arbitrator the determination of validity and arbitrability." *Taylor*, 2020 WL 1248655, at *4. Given the large body of precedent that a contract's reference to the AAA Rules clearly and unmistakably delegates the authority to determinate arbitrability to the arbitrator, the Court finds that the parties properly delegated such authority to the arbitrator.[8] Accordingly, the Court does not decide whether ERI's claims fall within the arbitration provision of the Contract. *See Attix v. Carrington Mortgage Services*, LLC, 35 F.4th 1284, 1296 (11th Cir. 2022) ("Just as a court may not decide a

---

[7] ERI cites *Awuah v. Coverall North America, Inc.*, 554 F.3d 7, 12 (1st Cir. 2009), where the First Circuit simply stated in passing that "[i]t is doubtful that many people read the small print in form contracts, let alone the small print in arbitration rules that are cross-referenced by such contracts," but did not suggest that a reference to the AAA Commercial Rules is ultimately ineffective to delegate to the arbitrator the authority to decide issues of arbitrability.

[8] To the extent ERI contends the Contract's forum selection clause contradicts the Contract's specific delegation of the threshold issue of arbitrability to the arbitrator, that argument is rejected on the same grounds as the Court rejects ERI's argument that the forum selection clause and the arbitration clause are in conflict with each other.

merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.") (quoting *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019) (clarifying that even when argument that a claim is subject to arbitration is "wholly groundless" the court must respect a delegation to an arbitrator and "may not override the contract.")).

Because the Court finds that the arbitration agreement is valid, the arbitration provision has not been waived,[9] and all questions of arbitrability have been delegated to the arbitrator, the Court compels arbitration as to all of ERI's claims.[10]

### B. Case to be Stayed

Having determined that all claims must proceed to arbitration, the Court now turns to whether the case should be dismissed or stayed. Defendants argue that the "Court has discretion whether to dismiss or stay this action." ECF No. [28] (citing *Perera v. H&R Block Eastern Enters., Inc.*, 914 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012)). Accordingly, Defendants contend the Court should dismiss rather than stay the case because, pursuant to the forum selection clause, "confirmation or vacatur of any arbitral award would ultimately have to take place in a court in Dallas [County], Texas." *Id.* at 11. Therefore, staying the case would be superfluous.

ERI argues that the case should be stayed in light of the Court's decision to compel arbitration. *See* ECF No. [45] at 8. ERI points to the United States Supreme Court's recent decision in *Smith v. Spizzirri*, where the Court held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the

---

[9] *See supra* note 6.

[10] Because all of ERI's claims must proceed to arbitration, the Court need not consider ERI's remaining arguments regarding the validity of its claims or the scope of the Contract's arbitration clause.

court to stay the proceeding." *Id.* at 8-9 (quoting 601 U.S. 472, 478 (2024)). In light of *Spizzirri*, ERI contends that the Court must stay the case rather than dismiss it in order to comply with the statutory requirements of the FAA. *See id.* at 9.

ERI is correct. The Court has no discretion to stay the case here. 9 U.S.C. § 3 of the FAA provides that "when a dispute is subject to arbitration, the court '*shall* on application of one of the parties stay the trial of the action until [the] arbitration' has concluded." *Spizzirri*, 601 U.S. at 473-74 (quoting 9 U.S.C. § 3) (emphasis added). While Courts in this district have at times ignored the § 3's mandatory[11] language and ultimately dismissed cases where all the claims were deemed to be arbitrable,[12] the *Spizzirri* Court expressly foreclosed dismissal as an option under such circumstances so long as one of the parties has requested the Court to stay the case pending arbitration. *See id.* ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). Therefore, because ERI has requested this case be stayed, the Court may not dismiss the case.[13]

---

[11] *See Maine Community Health Options v. United States*, 590 U.S. 296, 310 (2020) ("'Unlike the word "may," which implies discretion, the word "shall" usually connotes a requirement'").

[12] *See, e.g.*, *Treto v. Princess Lines, Ltd.*, Case No. 1:17-cv-20790, 2017 WL 7732870, at *6 (S.D. Fla. Aug. 10, 2017) ("Because all of Plaintiff's claims are subject to arbitration here, the Court finds that dismissal of the case is appropriate."); *Hodgson v. NCL (Bahamas), Ltd.*, 151 F. Supp. 3d 1315, 1317 (S.D. Fla. 2015); *Perera v. H & R Block Eastern Enters., Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012); *Kivisto v. Nat'l Football League Players Assoc.*, No. 10–24226–CIV, 2011 WL 335420, at *2 (S.D. Fla. Jan. 31, 2011); *Olsher Metals Corp. v. Olsher*, No. 01–3212–CIV, 2003 WL 25600635 at *9 (S.D. Fla. Mar. 26, 2003).

[13] The Court notes, however, that any motion to vacate or enforce the final arbitration award, as well as any issues that are not otherwise arbitrable, would be subject to the Contract's forum selection clause. That clause requires any legal proceedings to take place in Dallas County, Texas. *See* ECF No. [28]. Nevertheless, even if the Court may not be deciding other issues in the case, a stay rather than a dismissal is still appropriate to avoid any statute of limitations concerns that may arise by a dismissal. *See Spizzirri*, 601 U.S. at 477 n. 3.

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Compel Arbitration or in the Alternative, Dismiss ERI's Complaint, **ECF No. [28]**, is **GRANTED IN PART and DENIED IN PART.**

2. The parties shall proceed to arbitration on all claims alleged in ERI's Complaint.

3. The Case is **STAYED** pending the conclusion of arbitration.

4. The Clerk shall **ADMINISTRATIVELY CLOSE** the case.

5. The parties shall file a notice with the Court of the final arbitration award within **three (3) days** of the arbitrator's decision.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 10, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record